**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHONNTEY MOODIE, individually and on behalf of all others similarly situated, | Case No. CV 14-3471 FMO (ASx) |
| Plaintiff, | **ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS** |
| v. | |
| MAXIM HEALTHCARE SERVICES, INC., <u>et al.</u>, | |
| Defendants. | |

Having reviewed and considered all the briefing filed with respect to Plaintiff's Unopposed Renewed Motion for Class Certification and Preliminary Approval of Settlement Agreement (Dkt. 134, "Motion"), and the oral argument presented at the hearing on August 31, 2017 and January 18, 2018, the court concludes as follows.

**<u>BACKGROUND</u>**

On May 5, 2014, Ronald Kroenig ("Kroenig") filed this class action against Maxim Healthcare Services, Inc. ("Maxim") and E-Verifile.com, Inc. ("E-Verifile") asserting a single claim for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, <u>et seq.</u> (<u>See</u> Dkt. 1, Complaint). Following Kroenig's passing in April 2017, the Third Amended Complaint, the operative complaint, was filed, replacing Kroenig with Shonntey Moodie ("plaintiff" or "Moodie") as the named plaintiff. (<u>See</u> Dkt. 117, "TAC" at ¶¶ 1 & 6; Dkt. 114-3, Declaration of Christopher

P. Ridout in Support of Plaintiff's Ex Parte Application at ¶ 2).  Plaintiff alleges that in connection with her application for employment, Maxim obtained her consumer report using an invalid release and authorization form.   (See Dkt. 117, TAC at ¶ 2, 8-9, 22-28 & Exh. 1, Release and Authorization Form).  According to plaintiff, the authorization form "waiver of rights provisions [that] facially contravene the requirements of the FCRA that the disclosure appear in a document that consists solely of the disclosure."[1]  (Id. at ¶ 25; see also id. at ¶ 28 (alleging authorization form violated the FCRA's requirement that the "authorization provide a clear and conspicuous disclosure, and that the disclosure appear in a document that consists solely of the disclosure")).  Plaintiff avers that Maxim used the form with the liability waiver on a nationwide basis between May 5, 2009 and August 27, 2012.  (See id. at ¶ 21).

During the litigation of this action, which included the filing of several motions, including a motion for class certification and motions for summary judgment, (see Dkt. 135, Plaintiff's Memorandum of Points and Authorities ("Memo") at 3; Dkt. Nos. 18, 41, 57, 92), and following "considerable formal discovery," (see Dkt. 135, Memo at 2), the parties settled the case in January 2017.  (See id. at 3-4; see Dkt. 106, Notice of Settlement).

Following the hearing on the instant Motion, plaintiff's counsel requested that the court delay ruling on the Motion for undisclosed reasons.  On December 14, 2018, plaintiff's counsel explained that the delay was due to defense counsel's disclosure that the number of class members exceeded defendant's original estimate.  (See, e.g., Dkt 144, Declaration of Hannah Fernandez in Support of Preliminary Approval of Class Action Settlement ("Fernandez Decl.") at ¶ 5).  Plaintiff's counsel explained that in August 2018, after defense counsel confirmed the increase in class members, the parties met and conferred to discuss the effect on the settlement.  (Id. at ¶ 7).  The parties determined that the increase did not materially affect or alter the terms of the settlement in a "non-quantitative manner" but to "ensure that each redeeming Class Member receives the same benefit of the bargain as she or he would have before the increase in Class

---

[1]  Capitalization, emphasis, internal alteration marks, and internal quotation marks may be altered or omitted without notation in record citations.

size," the settlement fund was increased and the cy pres distribution initially proposed was eliminated.  (Id. at ¶ 8).  Accordingly, the parties revised the settlement agreement as well as the notice documents.  (See id. at ¶¶ 10-11).

In the instant Motion, plaintiff seeks an order: (1) provisionally certifying a nationwide class for settlement purposes; (2) preliminarily approving the settlement; (3) directing dissemination of class notice; and (4) scheduling a final approval hearing.  (See Dkt. 134, Motion at 1).

**LEGAL STANDARD**

"[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

I.    CLASS CERTIFICATION.

At the preliminary approval stage, the court "may make either a preliminary determination that the proposed class action satisfies the criteria set out in Rule 23[2] or render a final decision as to the appropriateness of class certification."  Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149, *3 (S.D. Fla. 2010) (internal citation omitted); see also Sandoval v. Roadlink USA Pac., Inc., 2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997)) ("Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23[.]").  "A court considering such a request should give the Rule 23 certification factors 'undiluted, even heightened, attention in the settlement context.'"  Sandoval, 2011 WL 5443777, at *2 (quoting Amchem, 521 U.S. at 620, 117 S.Ct. at 2248).  "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  Amchem, 521 U.S. at 620, 117 S.Ct. at 2248.

A party seeking class certification must first demonstrate that:  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the

[2]   All "Rule" references are to the Federal Rules of Civil Procedure.

3

class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011). Rule 23(b) is satisfied if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

1    (D) the likely difficulties in managing a class action.

2    Fed. R. Civ. P. 23(b)(1)-(3).

3    The party seeking class certification bears the burden of demonstrating that the proposed

4    class meets the requirements of Rule 23.  See Dukes, 564 U.S. at 350, 131 S.Ct. at 2551 ("A party

5    seeking class certification must affirmatively demonstrate his compliance with the Rule – that is,

6    he must be prepared to prove that there are in fact sufficiently numerous parties, common

7    questions of law or fact, etc.").  However, courts need not consider the Rule 23(b)(3) issues

8    regarding manageability of the class action, as settlement obviates the need for a manageable

9    trial.  See Morey v. Louis Vuitton N. Am., Inc., 2014 WL 109194, *12 (S.D. Cal. 2014) ("[B]ecause

10   this certification of the Class is in connection with the Settlement rather than litigation, the Court

11   need not address any issues of manageability that may be presented by certification of the class

12   proposed in the Settlement Agreement."); Rosenburg v. I.B.M., 2007 WL 128232, *3 (N.D. Cal.

13   2007) (discussing "the elimination of the need, on account of the Settlement, for the Court to

14   consider any potential trial manageability issues that might otherwise bear on the propriety of class

15   certification").

16   II.    FAIRNESS OF CLASS ACTION SETTLEMENT.

17   Rule 23 provides that "the claims, issues, or defenses of a certified class may be settled

18   . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)]

19   is the protection of th[e] class members, including the named plaintiffs, whose rights may not have

20   been given due regard by the negotiating parties."  In re Syncor ERISA Litig., 516 F.3d 1095,

21   1101-02 (9th Cir. 2008) (quoting Officers for Justice v. Civil Service Comm'n of the City & Cnty.

22   of S.F., 688 F.2d 615, 624 (9th Cir. 1982), cert. denied 459 U.S. 1217 (1983)).  Accordingly, a

23   district court must determine whether a proposed class action settlement is "fundamentally fair,

24   adequate, and reasonable."  Staton, 327 F.3d at 959; see Fed. R. Civ. Proc. 23(e).  Whether to

25   approve a class action settlement is "committed to the sound discretion of the trial judge."  Class

26   Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir.), cert. denied, Hoffer v. City of Seattle,

27   506 U.S. 953 (1992) (internal quotation marks and citation omitted).

28   "If the [settlement] proposal would bind class members, the court may approve it only after

5

a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  "[S]ettlement approval that takes place prior to formal class certification requires a higher standard of fairness [given t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative[.]"  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  As the Ninth Circuit has observed, "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement.  Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011).

Approval of a class action settlement requires a two-step process – a preliminary approval followed by a later final approval.  See West v. Circle K Stores, Inc., 2006 WL 1652598, *2 (E.D. Cal. 2006) ("[A]pproval of a class action settlement takes place in two stages."); Tijero v. Aaron Bros., Inc., 2013 WL 60464, *6 (N.D. Cal. 2013) ("The decision of whether to approve a proposed class action settlement entails a two-step process.").  At the preliminary approval stage, the court "evaluate[s] the terms of the settlement to determine whether they are within a range of possible judicial approval."  Wright v. Linkus Enters., Inc., 259 F.R.D. 468, 472 (E.D. Cal. 2009).  Although "[c]loser scrutiny is reserved for the final approval hearing[,]" Harris v. Vector Mktg. Corp., 2011 WL 1627973, *7 (N.D. Cal. 2011), "the showing at the preliminary approval stage – given the amount of time, money and resources involved in, for example, sending out new class notices – should be good enough for final approval."  Spann v. J.C. Penney Corp., 314 F.R.D. 312, 319 (C.D. Cal. 2016).  "At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval."  Id. (internal quotation marks omitted); Harris, 2011 WL 1627973, at *7 (same); Cordy v. USS-Posco Indus., 2013 WL 4028627, *3 (N.D. Cal. 2013) ("Preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement

appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.") (internal quotation marks omitted).

## DISCUSSION

I.   CLASS CERTIFICATION.

    A.   <u>Rule 23(a) Requirements</u>.

        1.   **Numerosity**.

The first prerequisite of class certification requires that the class be "so numerous that joinder of all members is impractical[.]" Fed. R. Civ. P. 23(a)(1).  Although impracticability does not hinge only on the number of members in the putative class, joinder is usually impracticable if a class is "large in numbers." <u>See Jordan v. Cnty. of L.A.</u>, 669 F.2d 1311, 1319 (9th Cir.), <u>vacated on other grounds</u>, 459 U.S. 810 (1982) (class sizes of 39, 64, and 71 are sufficient to satisfy the numerosity requirement); <u>Jimenez v. Domino's Pizza, Inc.</u>, 238 F.R.D. 241, 247 (C.D. Cal. 2006) (same).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." <u>Slaven v. BP Am., Inc.</u>, 190 F.R.D. 649, 654 (C.D. Cal. 2000); <u>see Tait v. BSH Home Appliances Corp.</u>, 289 F.R.D. 466, 473 (C.D. Cal. 2012) ("A proposed class of at least forty members presumptively satisfies the numerosity requirement.").

Here, the members of the class are so numerous that joinder of all members is impracticable.  According to the plaintiff, there are more than 65,000 class members, (<u>see</u> Dkt. 135, Memo at 18), which easily exceeds the minimum threshold for numerosity under Rule 23(a)(1).

        2.   **Commonality**.

The commonality requirement is satisfied if "there are common questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2).  Commonality requires plaintiff to demonstrate that her claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Dukes</u>, 564 U.S. at 350, 131 S.Ct. at 2551; <u>see Wolin v. Jaguar Land Rover N. Am., LLC</u>, 617 F.3d 1168, 1172 (9th

Cir. 2010) (The commonality requirement demands that "class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.") (internal quotation marks omitted).  "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted).  "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013), cert. denied, 135 S.Ct. 53 (2014) (emphasis and internal quotation marks omitted); see Mazza, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact").  Proof of commonality under Rule 23(a) is "less rigorous" than the related preponderance standard under Rule 23(b)(3).  See Mazza, 666 F.3d at 589.  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

The instant case involves common class-wide issues that are apt to drive the resolution of plaintiff's claims.  The common questions include:  whether the disclosure forms executed by plaintiff and the class violate § 1681b(b)(2)[3] of the FCRA; and whether Maxim's disclosure was clear and conspicuous.  (See Dkt. 135, Memo at 19; see also Dkt. 117, TAC at ¶ 35).  Here, the Rule 23(a)(2) factor is satisfied, particularly given that Maxim "does not dispute that it has used a standardized disclosure form for all class members[.]"  (See Dkt. 135, Memo at 20); see, e.g., Shelton v. Hal Hays Constr., Inc., 2017 WL 1439683, *3 (C.D. Cal. 2017) (finding commonality

---

[3]  Section 1681b(b)(2)(A) of the FCRA provides: "Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless – (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person."

requirement satisfied where common question was whether defendant violated FCRA by using certain forms); Kirchner v. Shred-It USA, Inc., 2015 WL 1499115, *3 (E.D. Cal. 2015) ("Whether these forms complied with § 1681b(b)(2) is a question common to all class members. Class members would also face the common question of whether Shred-it 'willfully' failed to comply with § 1681b(b) (2)'s requirement.  These questions of law are therefore applicable in the same manner to each member of the class, making class relief based on commonality appropriate.") (citations omitted); Milbourne v. JRK Residential Am., LLC, 2014 WL 5529731, *5 (E.D. Va. 2014) ("[Defendant] has admitted that it has used a standardized waiver and disclosure form for all class members, including [plaintiff]. Thus, if [plaintiff] is able to establish that [defendant's form] did not satisfy Section 1681b(b)(2)'s requirements this issue will be resolved not only in [plaintiff's] favor, but in the favor of all class members.  Thus, the legality of the forms is of 'such a nature that it is capable of classwide resolution' and satisfies the commonality requirement[.]"); Legge v. Nextel Commc'ns, Inc., 2004 WL 5235587, *5 (C.D. Cal. 2004) ([C]ommonality is often found in consumer fraud and related actions where standardized documents and procedures are used. This is true for violations of FCRA[.]").

### 3.   **Typicality**.

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted).  To demonstrate typicality, plaintiff's claims must be "reasonably co-extensive with those of absent class members[,]" although "they need not be substantially identical."  Hanlon, 150 F.3d at 1020; see Ellis, 657 F.3d at 984 ("Plaintiffs must show that the named parties' claims are typical of the class.").  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct."  Ellis, 657 F.3d at 984 (internal quotation marks and citation omitted).

Here, the claims of the representative plaintiff are typical of the claims of the class. Plaintiff's claims arise from the same nucleus of facts as the class – Maxim's use of a disclosure

form to obtain plaintiff's and class members' consumer reports – and are based on the same legal theory, i.e., the disclosure form violated the FCRA.  (See Dkt. 117, TAC at ¶¶ 2 & 8-28; Dkt. 135, Memo at 20-21); see, e.g., Shelton, 2017 WL 1439683, at *4 (finding typicality requirement met where claims arose from same underlying conduct, namely defendant's use of form that violated FCRA); Brown v. NFL Players Ass'n., 281 F.R.D. 437, 442 (C.D. Cal. 2012) (typicality satisfied where plaintiff's claims were based on "the same event or practice or course of conduct that [gave] rise to the claims of other class members and . . . are based on the same legal theory") (internal quotation marks omitted).  Additionally, the court is not aware of any facts that would subject the class representative "to unique defenses which threaten to become the focus of the litigation." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted).

### 4. **Adequacy of Representation**.

"The named Plaintiff[] must fairly and adequately protect the interests of the class." Ellis, 657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)).  "To determine whether [the] named plaintiff[] will adequately represent a class, courts must resolve two questions:  (1) do[es] the named plaintiff[] and [her] counsel have any conflicts of interest with other class members and (2) will the named plaintiff[] and [her] counsel prosecute the action vigorously on behalf of the class?"  Id. (internal quotation marks and citation omitted).  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."  Id.

Under the circumstances, "[t]he adequacy-of-representation requirement is met here because Plaintiff[ has] the same interests as the absent Class Members. . . .  Further, there is no apparent conflict of interest between the named Plaintiff['s] claims and those of the other Class Members[] – particularly because the named Plaintiff[ has] no separate and individual claims apart from the Class."  Barbosa v. Cargill Meat Sols. Corp, 297 F.R.D. 431, 442 (E.D. Cal. 2013).  As plaintiff states, she "understand[s] that [she] represent[s] the interests of the Class" and that "[she] hold[s] certain duties to the class, and must always consider the interests of the Class."  (Dkt. 138, Declaration of Plaintiff Shonntey Moodie ("Moodie Decl.") at ¶ 7).

Finally, plaintiff's counsel requests, and the Settlement Agreement provides, that the court appoint as class counsel Zimmerman Reed ("ZR") and Mahoney Law Group, APC ("Mahoney"). (See Dkt. 144-1, Settlement Agreement at ¶¶ 11 & 39; Dkt. 135, Memo at 22).  Christopher Ridout ("Ridout") of the ZR firm states that he has experience in prosecuting and settling mass tort actions and class actions, (see Dkt. 136, Ridout Decl. at ¶ 10), and that he has recently been appointed as either lead liaison counsel, class counsel, or served on a plaintiff's steering committee in numerous class actions.  (See id. at ¶ 11; see also id. at Exh. 3, Firm Resume).  Kevin Mahoney ("Mahoney") of the Mahoney firm represents that since 2007, he has "been involved in the litigation and settlement of several employment law class action matters[.]"  (See Dkt. 137, Declaration of Kevin Mahoney ("Mahoney Decl.") at ¶ 4; see also id. at ¶ 5 (listing cases in which he served as lead or co-counsel).  Based on counsel's representations, and having observed counsel's diligence in litigating this case, the court finds that plaintiff's counsel are competent, and that the adequacy of representation requirement is satisfied.  See Barbosa, 297 F.R.D. at 443 ("There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have litigated numerous class action cases.").

B.    Rule 23(b) Requirements.

Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action."  Hanlon, 150 F.3d at 1022 (internal quotation marks omitted).  The rule requires two different inquiries, specifically a determination as to whether:  (1) "questions of law or fact common to class members predominate over any questions affecting only individual members[;]" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); see Spann, 314 F.R.D. at 321-22.

1          1.   **Predominance**.

2        "The Rule 23(b)(3) predominance inquiry tests whether [the] proposed class[ is] sufficiently

3    cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623, 117 S.Ct. at 2249.

4    "Rule 23(b)(3) focuses on the relationship between the common and individual issues.  When

5    common questions present a significant aspect of the case and they can be resolved for all

6    members of the class in a single adjudication, there is clear justification for handling the dispute

7    on a representative rather than on an individual basis." Hanlon, 150 F.3d at 1022 (internal

8    quotation marks and citations omitted); see In re Wells Fargo Home Mortg. Overtime Pay Litig.,

9    571 F.3d 953, 959 (9th Cir. 2009) ("[T]he main concern in the predominance inquiry . . . [is] the

10   balance between individual and common issues.").  Additionally, the class damages must be

11   sufficiently traceable to plaintiff's liability case.  See Comcast Corp. v. Behrend, 133 S.Ct. 1426,

12   1433 (2013).

13       For the reasons discussed above, see supra at § I.A.2., the court is persuaded that

14   common questions predominate over individual questions. See, e.g., Shelton, 2017 WL 1439683,

15   at *5 ("No individualized questions predominate, and the factual and legal issues in this case are

16   the same for every class member – that is, whether Defendant willfully violated the law by failing

17   to list the disclosures in its employment application in a stand-alone document."); Kirchner, 2015

18   WL 1499115, at *6 ("[P]laintiff's claim turns on the legality of a common method used by Shred-it

19   for disclosing that it will seek consumer reports for employment purposes and whether this method

20   was a willful violation of the FCRA.  All of the disclosure and authorization forms that predicate

21   class members' claims were allegedly deficient because they included release and/or indemnity

22   provisions.  The class claim therefore demonstrates '[a] common nucleus of facts and potential

23   legal remedies' for putative class members that can be resolved in a single adjudication.") (quoting

24   Hanlon, 150 F.3d at 1022.  Finally, the relief sought applies to all class members and is traceable

25   to plaintiff's liability case.  See Comcast, 133 S.Ct. at 1433.  In short, common questions

26   predominate over all others in this litigation.

27         2.   **Superiority**.

28       "The superiority inquiry under Rule 23(b)(3) requires determination of whether the

objectives of the particular class action procedure will be achieved in the particular case" and "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." Hanlon, 150 F.3d at 1023. Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to superiority. See Fed. R. Civ. P. 23(b)(3)(A)-(D).

The first factor considers "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). "This factor weighs against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation." Barbosa, 297 F.R.D. at 444. Here, plaintiff does not assert claims for emotional distress, nor is there any indication that the amount of damages any individual class member could recover is significant or substantially greater than the potential recovery of any other class member. (See, generally, Dkt. 117, TAC). The alternative method of resolution is individual claims for a relatively modest amount of damages, but such claims would likely never be brought, as "litigation costs would dwarf potential recovery." Hanlon, 150 F.3d at 1023; see Leyva v. Medline Indus., Inc., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims. Thus, class certification is also the superior method of adjudication."); Schwarm v. Craighead, 233 F.R.D. 655, 664 (E.D. Cal. 2006) (finding FDCPA class action superior to individual claims because "[n]ot only are most individual consumers unaware of their rights under the FDCPA, but also the size of the individual claims is usually so small there is little incentive to sue individually") (internal quotation marks omitted). In short, "there is no evidence that Class members have any interest in controlling prosecution of their claims separately nor would they likely have the resources to do so." Munoz v. PHH Corp., 2013 WL 2146925, *26 (E.D. Cal. 2013).

The second factor to consider is "the extent and nature of any litigation concerning the controversy already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B). Here, there is no indication that any class member is involved in any other litigation concerning the claims in this case. (See, generally, Dkt. 135, Memo at 24-25).

The third factor is "the desirability or undesirability of concentrating the litigation of the

claims in the particular forum[,]" Fed. R. Civ. P. 23(b)(3)(C), and the fourth factor relates to "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). As noted above, "[i]n the context of settlement . . . the third and fourth factors are rendered moot and are irrelevant." Barbosa, 297 F.R.D. at 444; see Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.") (internal citation omitted).

The only factor in play here weighs in favor of class treatment. Further, the filing of separate suits by several thousand class members "would create an unnecessary burden on judicial resources." Barbosa, 297 F.R.D. at 445. Under the circumstances, the court finds that the superiority requirement is satisfied.

II.   FAIRNESS, REASONABLENESS, AND ADEQUACY OF THE PROPOSED SETTLEMENT.

A.   The Settlement is the Product of Arm's-Length Negotiations.

"This circuit has long deferred to the private consensual decision of the parties." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009). The Ninth Circuit has "emphasized" that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Id. (internal quotation marks omitted). When the settlement is "the product of an arms-length, non-collusive, negotiated resolution[,]" id., courts afford the parties the presumption that the settlement is fair and reasonable. See Spann, 314 F.R.D. at 324; In re Netflix Privacy Litig., 2013 WL 1120801, *4 (N.D. Cal. 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive arms' length negotiations conducted by capable and experienced counsel.").

Here, there is no evidence of collusion or fraud leading to, or taking part in, the settlement negotiations between the parties. On the contrary, Maxim vigorously defended against the claims,

filing a motion to dismiss, opposing class certification, and filing two motions for summary judgment. (See Dkts. 18, 48, 57, 92). With respect to discovery, the parties engaged in both "formal discovery (including review of thousands of pages of documents and depositions)" and expert discovery. (Dkt. 135, Memo at 11; see also Dkt. 136, Ridout Decl. at ¶¶ 8 & 25 (listing discovery tasks)).

Although the parties participated in a mediation session on June 25, 2015, before the Honorable Peter D. Lichtman (Ret.) ("Lichtman"), they were initially unable to fully resolve the claims in this action. (See Dkt. 40, Joint Status Report Re: Settlement; see also Dkt. 135, Memo at 3). However, according to plaintiff, "the Parties were able to consider each other's perceived strengths and weaknesses of their positions[,]" (Dkt. 135, Memo at 3), and following discovery, "comprehensive motion briefing" on class certification and summary judgment, and "extensive negotiations," (id.), the parties settled the case. (See id. at 3 & 12).

Based on the evidence and record before the court, the court is persuaded that the parties thoroughly investigated and considered their own and the opposing parties' positions. The parties had a sound basis for measuring the terms of the settlement against the risks of continued litigation, and there is no evidence that the settlement is "the product of fraud or overreaching by, or collusion between, the negotiating parties[.]" Rodriguez, 563 F.3d at 965 (quoting Officers for Justice, 688 F.2d at 625).

B.    The Amount Offered in Settlement Falls Within a Range of Possible Judicial Approval and is a Fair and Reasonable Outcome for Class Members.

1.    **Recovery for Class Members.**

The parties have defined the settlement class as "[a]ll individuals who (1) were hired by Maxim between May 5, 2009 and August 27, 2012; (2) executed one of the forms collectively attached as Exhibit 'A' or a substantively identical version of those forms; and (3) were the subject of a consumer report procured by Maxim before August 27, 2012." (Dkt. 144-1, Class Action Settlement Agreement ("Settlement Agreement") at ¶ 38 & Exh. A; Dkt. 135, Memo at 4). The relief available to the class will come from a $1,200,000 non-reversionary settlement fund, (see Dkt. 144-1, Settlement Agreement at ¶¶ 36, 41, 72; Dkt. 144, Fernandez Decl. at ¶ 8), after all

court-approved deductions for attorney's fees, costs, settlement administration fees, and the class representative incentive payment. (See Dkt. 144-1, Settlement Agreement at ¶¶ 20 & 41). Payment from the settlement fund will be paid on a pro rata basis to class members who submit timely claim forms.[4] (See id. at ¶ 76). After deducting amounts for claims administration (estimated $105,000), and assuming the court awards the full amount requested for attorney's fees and costs ($300,000), and an incentive award to plaintiff ($7,500), there would be approximately $787,500 remaining in the Settlement Fund for distribution among the class members. According to plaintiff's counsel, assuming a 20% claim submission rate, "each redeeming Class Member will receive a check in the amount of approximately $32.51[.]" (Dkt. 144, Fernandez Decl. at ¶ 9).

The settlement here is fair, reasonable, and adequate, particularly when viewed in light of the litigation risks in this case. At the time the parties settled the matter, (see Dkt. 106, Notice of Settlement), there was a "real and substantial risk that the Court could have dismissed the case . . . based on standing and damages issues." (See Dkt. 135, Memo at 13). For instance, the parties "intensely" disputed plaintiff's standing in light of the Supreme Court's decision in Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1549 (2016); (see Dkt. 135, Memo at 13).[5] Plaintiff also notes that statutory penalties are only available for willful violations, and that if only negligence was shown, class members would be limited to their actual damages. (See Dkt. 135, Memo at 13-14); In re Uber, 2017 WL 2806698, at *7 ("Assuming that Plaintiffs could not establish that Uber's violations were willful, the damages would be limited to actual damages."). Moreover, plaintiff recognizes

---

[4] The value of each claim will be calculated by dividing one (1) by the total number of class members, and then multiplying that number with the net settlement fund. (See Dkt. 144-1, Settlement Agreement at ¶ 76).

[5] Plaintiff notes that the parties reached their settlement before the Ninth Circuit issued its opinion in Syed v. M-I, LLC, 853 F.3d 492, 499 (9th Cir. 2017), (see Dkt. 135, Memo at 13 n. 3), which held that allegations that defendants violated the FCRA by including a liability waiver in the same document as the mandatory disclosure satisfied Article III's standing requirement. See Syed, 853 F.3d at 499-500. Syed does not undermine the reasonableness of the settlement because "[d]espite a favorable Ninth Circuit ruling, since Spokeo left the issue open, the question of standing in FCRA disclosure cases has not been clarified by the Supreme Court." In re Uber FCRA Litig., 2017 WL 2806698, *7 (N.D. Cal. 2017).

the costs of trial and the delay in continued litigation, including an appeal.  (See Dkt. 135, Memo

at 3 & 15).  In short, the risks of continued litigation are significant in this case and when weighed

against those risks, and the costs and delays associated with continued litigation, the court is

persuaded that the settlement's benefits to the class fall within the range of reasonableness.  See,

e.g., In re Uber, 2017 WL 2806698, at *7 (granting preliminary approval of settlement that was

worth 7.5% or less of the expected value); see also Linney v. Cellular Alaska P'ship, 151 F.3d

1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction

of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly

inadequate and should be disapproved.") (internal quotation marks and citation omitted).

### 2. **Release of Claims**.

Beyond the value of the settlement, potential recovery at trial, and inherent risks in

continued litigation, courts also consider whether a class action settlement contains an overly

broad release of liability.  See 4 Newberg on Class Actions § 13:15, at 326 (5th ed. 2014); see,

e.g., Fraser v. Asus Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary

approval of proposed settlement that provided defendant a "nationwide blanket release" in

exchange for payment "only on a claims-made basis," without the establishment of a settlement

fund or any other benefit to the class).

Here, plaintiff and class members who do not exclude themselves from the settlement  will

release and discharge Maxim (as defined in the Settlement Agreement) "from any and all liabilities,

rights, claims, actions, causes of action, obligations, demands, damages, costs, expenses,

attorneys' fees, losses, claims, liabilities, demands, and remedies, of whatever character, whether

known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated,

legal, statutory, or equitable, that result from, arise out of, are based upon, in connection with, or

relate to the conduct, omissions, duties or matters between May 5, 2014 and Preliminary Approval

that were or could have been alleged in the Action, including without limitation, any claims, actions,

causes of action, demands, damages, losses, or remedies, whether based upon federal or state

statutes or federal or state common law, relating to, based upon, resulting from, or arising out of

any claims arising out of the alleged violation fo the FCRA, any similar claims under applicable

state law, or any other state or local law governing the use of background checks." (Dkt. 144-1, Settlement Agreement at ¶ 79). With the understanding that, under the release, the settlement class members are not giving up claims unrelated to those asserted in this action, the court finds that the release adequately balances fairness to absent class members and recovery for plaintiff with defendant's business interest in ending this litigation. See, e.g., Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

C.     The Settlement Agreement Does not Improperly Grant Preferential Treatment to the Class Representative.

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013). The Ninth Circuit has instructed "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Id. The court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest. See id. at 1165. "In deciding whether [an incentive] award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

The Settlement Agreement provides that class counsel may petition the court for an incentive award for the class representative of up to $7,500 "for her time, effort and risk in connection with the Action." (Dkt. 144-1, Settlement Agreement at ¶ 81). It further provides that the class representative "acknowledges that she . . . supports the Settlement as fair, adequate and reasonable to the Class, whether or not the Court appoints her as Class Representative or awards her any Service Award[,]" (id. at ¶ 82), and that her ability "to apply to the Court for a Service Award is not conditioned on her support of the Settlement." (Id. at ¶ 83).

Moodie states that "while [she] recently joined the case as a result of the passing of the original named Class Representative, [she] nonetheless assisted [her] attorneys in trying to bring

this case to clos[ure]." (Dkt. 138, Moodie Decl. at ¶ 5).  For example, she provided counsel with documents stemming from her employment with Maxim.  (See id.).  Although Moodie appears to have been a diligent class representative, the court believes, in light of the fact that she entered the case upon the filing of the TAC (which was filed months after the parties settled the matter), that the requested $7,500 is excessive.  Under the circumstances, the court tentatively finds that an incentive payment of $5,000 is appropriate.  See Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014) (noting that in Ninth Circuit, $5,000 incentive awards are presumptively reasonable).  In short, because the parties agree that the settlement will remain in force regardless of whether Moodie receives an incentive payment, and because the court intends to grant a presumptively reasonable incentive payment of $5,000, the court is persuaded that there is no conflict of interest between Moodie and the absent class members.

      D.    Class Notice and Notification Procedures.

      Upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Federal Rule of Civil Procedure 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information.  See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

      A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir.), cert. denied, 543 U.S. 818 (2004) (internal quotation marks omitted).  "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir.), cert. denied, 544 U.S. 1044 (2005).  Settlement notices "are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." Gooch v. Life Investors Ins. Co. of America, 672 F.3d 402, 423 (6th Cir. 2012) (internal quotation marks omitted); see Wershba v. Apple Comput., Inc., 91 Cal.App.4th

224, 252 (2001) ("As a general rule, class notice must strike a balance between thoroughness and the need to avoid unduly complicating the content of the notice and confusing class members."). The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to its terms. See In re Integra Realty Resources, Inc., 262 F.3d 1089, 1111 (10th Cir. 2001) ("The standard for the settlement notice under Rule 23(e) is that it must `fairly apprise' the class members of the terms of the proposed settlement and of their options.").

Here, the parties have selected, subject to court approval, JND Legal Administration ("JND") as the Settlement Administrator. (See 144-1, Settlement Agreement at ¶ 33). The notice program will consist of a combination of: (1) individual notice to known class members in the form of a post-card notice ("Mail Notice"), (see Dkt. 135, Memo at 6; Dkt. 144-1, Settlement Agreement at ¶ 21 & 49; Dkt. 144-3 (Mail Notice)); and (2) a long form notice posted on a settlement website ("Long Notice") (collectively, "Notice"). (See Dkt. 135, Memo at 6; Dkt. 144-1, Settlement Agreement at ¶¶ 21 & 49; Dkt. 144-4, Long Notice). JND will establish a website for class members to submit claim forms and to access and download the Long Notice and Claim Form; the website will also provide access to relevant documents, including the relevant pleadings, Settlement Agreement, and the preliminary approval order. (See Dkt. 135, Memo at 7; Dkt. 144-1, Settlement Agreement at ¶ 37); see 3 Newberg on Class Actions § 8:17, at 283 (5th ed. 2014) ("[A]s the internet develops, it is easy, and relatively costless, to provide class members free access to a set of documents in the lawsuit at settlement, not just to a synopsis describing the settlement. A settlement website may encompass content ranging from the complaint to the settlement agreement and fee petition."). Finally, JND will establish and maintain a toll-free telephone line where class members can obtain information. (See Dkt. 135, Memo at 7).

The Mail Notice directs class members to the settlement website, which contains the Long Notice. (See Dkt. 144-3, Mail Notice). The Long Notice describes the nature of the action, including the class claims. (See Dkt. 144-4, Long Notice at 1 & 3); see Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii). The class definition is conspicuously included on the Mail Notice, so that individuals can determine whether they are part of the class. (See Dkt. 144-3, Mail Notice); see

<u>also</u> Fed. R. Civ. P. 23(c)(2)(B)(ii).  Both notices explain the benefits of the settlement and what class members must do to obtain benefits.  (<u>See</u> Dkt. 144-3, Mail Notice; Dkt. 144-4, Long Notice at 4-5).  The Long Notice includes an explanation laying out the class members' options under the settlement, <u>i.e.</u>, they may exclude themselves, object, or do nothing.  (<u>See</u> Dkt. 144-4, Long Notice at 1 & 4-6); <u>see</u> <u>also</u> Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi).  It explains that all class members who do not exclude themselves will release claims as set forth in the release provision.  (<u>See</u> Dkt. 144-4, Long Notice at 4); <u>see</u> <u>also</u> Fed. R. Civ. P. 23(c)(2)(B)(vii).  Also, if class members choose to object to the settlement, they may do so by submitting written objections, and they may attend the Final Fairness Hearing with or without an attorney.  (<u>See</u> Dkt. 144-4, Long Notice at 6-7); <u>see</u> <u>also</u> Fed. R. Civ. P. 23(c)(2)(B)(iv).  Information regarding the final approval hearing is also included.  (<u>See</u> Dkt. 144-4, Long Notice at 7).  Finally, the Long Notice directs class members to the website to get more information about the settlement.  (<u>See</u> <u>id.</u>).

Based on the foregoing, the court finds there is no alternative method of distribution that would be more practicable here, or any more reasonably likely to notify the class members.  Under the circumstances, the court finds that the procedure for providing notice and the content of the class notice constitute the best practicable notice to class members and  complies with the requirements of due process.

  E. <u>Summary</u>.

In short, the court's preliminary evaluation of the Settlement Agreement does not disclose grounds to doubt its fairness "such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys[.]"  <u>Manual for Complex Litigation</u> § 21.632 (4th ed. 2004); <u>see</u> <u>also</u> <u>Spann</u>, 314 F.R.D. at 323.

## **<u>CONCLUSION</u>**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Unopposed Renewed Motion for Class Certification and Preliminary Approval of Settlement Agreement **(Document No. 134)** is **granted** upon the terms and conditions set forth in this Order.

2.   The court preliminarily certifies the class, as defined in ¶ 38 of the Class Action Settlement Agreement ("Settlement Agreement") (Dkt. 144-1) for the purposes of settlement.

3.   The court preliminary appoints plaintiff Shonntey Moodie as class representative for settlement purposes.

4.   The court preliminarily appoints Zimmerman Reed and Mahoney Law Group, APC as class counsel for settlement purposes.

5.   The court preliminarily finds that the terms of the Settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6.   The proposed manner of notice of the settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7.   The court approves the form, substance, and requirements of the Mail Notice (Dkt. 144-3); Long Notice (Dkt. 144-4); and Claim Form (Dkt. 136-1, Exh. E).

8.   The parties shall carry out the settlement and claims process according to the terms of the Settlement Agreement.

9.   JND Legal Administration shall complete dissemination of class notice, in accordance with the Settlement Agreement, no later than **April 5, 2019**.

10.  Any class member who wishes to: (a) object to the settlement, including the requested attorney's fees, costs and incentive award; or (b) exclude him or herself from the settlement must file his or her objection to the settlement or request for exclusion no later than **June 4, 2019**, in accordance with the Settlement Agreement, and Notice.

11.  Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs and incentive award, shall, no later than **June 4, 2019**, file with the court a Notice of Intent to Appear at Fairness Hearing.

12.  A final approval (fairness) hearing is hereby set for **August 22, 2019,** at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement as well as the award of attorney's fees and costs to class counsel, and

1  service award to the class representative.

2  13.  Plaintiff shall file a motion for an award of class representative incentive payment and

3  attorney's fees and costs no later than **May 3, 2019,** and notice it for hearing for the date set forth

4  in paragraph 12 above.  Any objection to the motion for an award of class representative incentive

5  payment and attorney's fees and costs, by class members, shall be filed by the deadline set forth

6  in paragraph 10 above.   In the event any objections to the motion for an award of class

7  representative incentive payment and attorney's fees and costs are filed, class counsel shall, no

8  later than **July 11, 2019,** file a reply addressing the objections.

9  14.  Plaintiff shall, no later than **July 18, 2019,** file and serve a motion for final approval of

10  the settlement and a response to any objections to the settlement.  The motion shall be noticed

11  for hearing for the date set forth in paragraph 12 above.  Defendants may file and serve a

12  memorandum in support of final approval of the Settlement Agreement or in response to

13  objections no later than **July 25, 2019.**

14  15.  All proceedings in the Action, other than proceedings necessary to carry out or enforce

15  the Settlement Agreement or this Order, are stayed pending the final fairness hearing and the

16  court's decision whether to grant final approval of the settlement.

17  Dated this 4th day of February, 2019.

18

19  _____
                              /s/
20                    Fernando M. Olguin
                  United States District Judge