ZIMMERMAN REED, LLP
CHRISTOPHER P. RIDOUT (SBN: 143931)
  E-mail: christopher.ridout@zimmreed.com
HANNAH B. FERNANDEZ (SBN: 294155)
  E-mail: hannah.fernandez@zimmreed.com
2381 Rosecrans Ave., Suite 328
Manhattan Beach, California 90245
(877) 500-8780 - Telephone
(877) 500-8781 - Facsimile

MAHONEY LAW GROUP, APC
KEVIN MAHONEY (SBN: 235367)
  E-mail: kmahoney@mahoney-law.net
ALINA B. MAZEIKA (303840)
  E-mail: amazeika@mahoney-law.net
249 E. Ocean Boulevard, Suite 814
Long Beach, California 90802
(562) 590-5550 - Telephone
(562) 590-8400 - Facsimile

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHONNTEY MOODIE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>MAXIM HEALTHCARE SERVICES, INC., a Maryland Corporation, E-VERIFILE.COM, INC., a Georgia Corporation,<br><br>    Defendants. | Case No.: CV 14-3471 FMO (ASx)<br><br>*Assigned to Hon. Fernando M. Olguin*<br><br>**DECLARATION OF CHRISTOPHER P. RIDOUT IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date:        August 22, 2019<br>Time:       10:00 AM<br>Courtroom:  6D<br><br>Date Action Filed: May 5, 2014<br>FAC Filed:    July 9, 2014<br>SAC Filed:    September 12, 2014<br>TAC Filed:    May 8, 2017 |

I, Christopher P. Ridout, hereby declare as follows:

1. I am an attorney at law duly licensed to practice law before this Court and am one of the counsel of record representing Plaintiff in this matter bearing Case No. CV 14-3471 FMO (ASx). I submit this declaration in support of Plaintiff's Unopposed Motion for Final Approval of Class Settlement and Certification of Settlement Class. I have personal knowledge of the facts set forth herein and if called as a witness, I could and would testify competently thereto.

2. I am a partner of the law firm Zimmerman Reed LLP. The firm specializes in complex civil and class action litigation and has been appointed as lead counsel in multiple class action and multidistrict litigations in federal courts.

3. I have over 29 years of experience practicing law in California. I am a graduate of Harvard University and the University of the Pacific, McGeorge School of Law. I have been a member in good standing of the State Bar of California since 1989. I am also admitted to practice law before the following Courts: United States District Court for the Southern, Central, and Northern Districts of California; and the United States Court of Appeals for the Ninth Circuit.

4. I have never faced any disciplinary action or received any sanction from a state bar association for misconduct or an ethical violation.

5. My firm served as counsel for Plaintiff Ronald Kroenig from late 2013—when Ronald Kroenig contacted our law firm about his claims against Maxim—until his passing in 2017.

6. We, in conjunction with co-counsel, Mahoney Law Group, APC, began our investigation of the claims shortly after being contacted by Mr. Kroenig. The *Kroenig* lawsuit was filed on May 5, 2014 in the Central District of California alleging violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(2)(A) and 15 U.S.C. § 1681n(a) as against Maxim Healthcare Services Inc. ("Maxim" or "Defendant"). Plaintiff further sought declaratory relief to compel Maxim to comply with the FCRA.

7. Mr. Kroenig passed away unexpectedly in 2017. Class Counsel informed Maxim's counsel and thereafter endeavored to obtain a suitable named plaintiff with standing and interest to represent the interests of the putative class, enabling the recently agreed upon settlement to proceed. Shonntey Moodie retained Class Counsel and agreed to act as named plaintiff and putative class representative.

8. I have been actively involved in this litigation since its inception. My involvement in this matter has included, but has not been limited to, the following tasks:

   a. Conducting an extensive pre-suit and continuing investigation into the claims contained in the operative complaint, and reviewing numerous documents relating to Maxim;
   b. Strategizing case theories with co-counsel;
   c. Meeting and conferring with co-counsel on an ongoing basis;
   d. Meeting and conferring with opposing counsel on an ongoing basis;
   e. Discussing case matters with the former named plaintiff Ronald Kroenig (since deceased);
   f. Participating in the drafting and reviewing of numerous pleadings and settlement documents as well as performing requisite legal research;
   g. Participating in the drafting and review of Requests for Admission, Special Interrogatories and Requests for Production of Documents;
   h. Preparing for and participating in numerous in-person and telephonic meet-and-confers regarding discovery responses;
   i. Preparing for and participating in an in-person mediation session before the Honorable Peter D. Lichtman (Ret.);
   j. Participating in and handling settlement negotiations both at JAMS and thereafter with Defendant and Defendant's counsel; and
   k. Reviewing Defendant's voluminous documentation regarding the nature of documents generated in connection with Defendant's employment practices.

9. Only after completing each of the foregoing tasks, was the Settlement reached in this matter finalized. Moreover, as is demonstrated by the numerous meet-and-confers regarding pre and post mediation discovery issues, as well as the numerous settlement discussions that took place in-person and telephonically, this Settlement was the result of arms-length negotiation. Notably, the Parties did not discuss or negotiate Class Counsel's attorneys' fees and costs until after agreement on the material terms of settlement, including the monetary fund for the Settlement Class that had been reached.

10. The requested Service Award has been reduced from the $7,500 maximum the Parties agreed to in the Settlement (*see* Dkt. 144-1 ¶ 81) in accordance with the Court's tentative finding in its Order Granting Preliminary Approval (Dkt. 145) that $5,000 was appropriate based on the timing of Plaintiff's entrance into the Action. Counsel for the Parties revised the Notice Forms associated with the Settlement and approved by the Court to reflect this reduced amount prior to distribution of Notice to Class Members by the Settlement Administrator.

11. The Settlement creates a $1,200,000 cash common fund. After deduction of Notice and Administration Costs ($105,000) and, in the event the Court awards the full amount requests for attorneys' fees and costs ($300,000) and Service Award ($5,000), there will be $790,000 remaining in the Settlement Fund for distribution among Class Members.

12. In negotiating the Settlement, the Parties assumed, consistent with recent FCRA class actions, a 20% claim submission rate. With 121,124 Class Members, each redeeming Class Member would have received a check in the amount of $32.61.

13. Since the Preliminary Approval Order, the Parties worked alongside the Settlement Administrator JND Legal Administration ("JND") to ensure the Notice Program and Claims process went smoothly for Class Members. Class Counsel audited the website to ensure it was correct and user-friendly, reviewed the weekly reports from, and conferred with, JND about the progress of the Claims process, and responded to inquiries from Class Members who called Class Counsel's office.

14. As described in detail in the Declaration of Jennifer M. Keough Regarding Settlement Administration ("Keough Decl."), a true and correct copy of which is attached hereto as Exhibit 1, after review of the data provided by Maxim's counsel and removal of duplicate records, the number of Class Members who were sent Notice is 121,024. *See* Keough Decl. ¶ 6-7.

15. As described in detail in the Keough Decl., 24,037 valid and timely Claim Forms were submitted. With 24,037 Claims submitted from 121,024 Notices sent to Class Members, the rate of Claim submission is 19.9%.

16. Assuming that, as stated above in Paragraph 11, the Net Settlement Fund contains $790,000, each Settlement Class Member will receive one share of the Net Settlement Fund, equal to $32.87. *See* Agreement, Dkt. 144-1 ¶ 76.

17. As Class Counsel, we, as well as our co-counsel will continue to respond to inquiries from Class Members, oversee the Settlement through final approval and, if successful, of distribution of the Net Settlement Fund, oversee the Claims administration process, including addressing any Claim review issues, and handle any appeals.

18. As detailed in my declarations and accompanying exhibits filed in support of Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement (Dkt. 136) and Unopposed Motion for An Award of Class Representative Incentive Payment and Attorneys' Fees and Costs (Dkt. 149), I and my firm have extensive experience litigating consumer class action lawsuits. Based on my experience, I believe this Settlement to be fair and in the best interests of the Class.

19. Attached hereto as Exhibit 2 is a true and correct copy of the long form Notice in this Settlement. The long form Notice is available on the Settlement Website at http://www.maximhealthcaresettlement.com/documents.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of July 2019 at Manhattan Beach, California.

          /s/ Christopher P. Ridout
          Christopher P. Ridout