FILED
CLERK, U.S. DISTRICT COURT
11/12/2019
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CW___ DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHONNTEY MOODIE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MAXIM HEALTHCARE SERVICES, INC., et al.,<br><br>Defendants. | Case No. CV 14-3471 FMO (ASx)<br><br>**ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Having reviewed and considered Plaintiff's Motion for Final Approval of Class Action Settlement and Certification of Settlement Class, (Dkt. 154, "Motion"), and Plaintiff's Motion for an Award of Class Representative Incentive Payment and Attorney's Fees and Costs, (Dkt. 147, "Fees Motion"), and the oral argument presented during the final fairness hearing held on June 20, 2019, the court concludes as follows.

**BACKGROUND**

On May 5, 2014, Ronald Kroenig ("Kroenig") filed this class action against Maxim Healthcare Services, Inc. ("Maxim") and E-Verifile.com, Inc. ("E-Verifile") asserting a single claim for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et seq. (See Dkt. 1, Complaint). Following Kroenig's passing in April 2017, the Third Amended Complaint, the operative complaint, was filed, replacing Kroenig with Shonntey Moodie ("plaintiff" or "Moodie") as the named plaintiff. (See Dkt. 117, "TAC" at ¶¶ 1 & 6; Dkt. 114-3, Declaration of Christopher

P. Ridout in Support of Plaintiff's Ex Parte Application at ¶ 2). Plaintiff alleges that in connection with her application for employment, Maxim obtained her consumer report using an invalid release and authorization form. (See Dkt. 117, TAC at ¶ 2, 8-9, 22-28 & Exh. 1, Release and Authorization Form). According to plaintiff, the authorization form's "waiver of rights provisions facially contravene the requirements of the FCRA that the disclosure appear in a document that consists solely of the disclosure."[1] (Dkt. 117, TAC at ¶ 25; see also id. at ¶ 28 (alleging authorization form violated the FCRA's requirement that the "authorization provide a clear and conspicuous disclosure, and that the disclosure appear in a document that consists solely of the disclosure")). Plaintiff avers that Maxim used the form with the liability waiver on a nationwide basis between May 5, 2009 and August 27, 2012. (See id. at ¶ 21).

After extensive litigation, which included the filing of several motions, including a motion for class certification and a motion for summary judgment, (see Dkt. 145, Court's Order of February 4, 2019 ("Preliminary Approval Order" or "PAO") at 2), and following "considerable formal discovery," the parties settled the case in 2017. (See id.). The parties have defined the settlement class as "[a]ll individuals who (1) were hired by Maxim between May 5, 2009 and August 27, 2012; (2) executed one of the forms collectively attached as Exhibit 'A' or a substantively identical version of those forms; and (3) were the subject of a consumer report procured by Maxim before August 27, 2012." (Dkt. 144-1, Class Action Settlement Agreement ("Settlement Agreement") at ¶ 38 & Exh. A; Dkt. 145, PAO at 15).

The relief available to the class will come from a $1,200,000 non-reversionary settlement fund, (see Dkt. 144-1, Settlement Agreement at ¶¶ 36, 41, 72; Dkt. 145, PAO at 15-16), after all court-approved deductions for attorney's fees, costs, settlement administration fees, and the class representative incentive payment. (See Dkt. 144-1, Settlement Agreement at ¶¶ 20 & 41). Payment from the settlement fund will be paid on a pro rata basis to class members who submit

---

[1] Capitalization, emphasis, internal alteration marks, and internal quotation marks may be altered or omitted without notation in record citations.

timely claim forms.[2] (See id. at ¶ 76).

On February 4, 2019, the court granted preliminary approval of the settlement, appointed JND Legal Administration ("JND") as settlement administrator, and directed JND to provide notice to the class. (See Dkt. 145, PAO at 21-22). After the court issued its Preliminary Approval Order, JND implemented the notice program approved by the court. (See Dkt. 155, Memo at 1, 9-13; Dkt. 156-1, Declaration of Jennifer M. Keough Regarding Settlement Administration ("Keough Decl.") at ¶¶ 5-14 & Exh. B (Postcard Notice); Dkt. 145, PAO at 20-21 (approving notice program)). Specifically, on April 5, 2019, after checking and updating addresses via a National Change of Address search, JND sent notice to 121,045 class members via U.S. Mail. (See Dkt. 156-1, Keough Decl. at ¶¶ 6-7). There were only five requests for exclusion and no objections.[3] (See Dkt. 156-1, Keough Decl. at ¶¶ 16, 18). Given the claim submission rate of 19.9%, (see Dkt. 156-1, Keough Decl. at ¶ 20; Dkt. 156, Declaration of Christopher P. Ridout in Support of Plaintiff's Motion for Final Approval of Class Settlement and Certification of Settlement Class ("Ridout Decl.") at ¶ 15; Dkt. 155, Memo at 6 n. 4), class members who submitted a claim form will each receive approximately $32.87. (See Dkt. 156, Ridout Decl. at ¶ 16; Dkt. 155, Memo at 6).

Plaintiff now seeks: (1) final approval of the settlement; (2) attorney's fees and costs; and (3) an incentive payment for plaintiff. (See Dkt. 154, Motion; Dkt. 147, Fees Motion).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The

---

[2] Each individual who timely submitted a claim form will be entitled to a payment of an amount equal to one share of the net settlement fund. The value of each share will be calculated by dividing one by the total number of class members, and then multiplying that number with the net settlement fund. (See Dkt. 144-1, Settlement Agreement at ¶ 76; Dkt. 155, Memorandum of Points and Authorities in Support of Plaintiff's Unopposed Motion for Final Approval of Class Settlement and Certification of Settlement Class ("Memo") at 5-6).

[3] One class member filed on objection requesting that the court extend the claim-submission deadline, (see Dkt. 151), but withdrew her objection when her untimely claim was accepted by JND. (See Dkt. 152; see also Dkt. 155, Memo at 22 n. 8).

primary concern of [Rule[4] 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge[,]" Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (quoting Officers for Justice, 688 F.2d at 625), who must examine the settlement for "overall fairness[.]" In re Hyundai and Kia Fuel Economy Litig., 926 F.3d 539, 569 (9th Cir. 2019). The court may not "delete, modify or substitute certain provisions." Id. (internal quotation marks omitted). "The settlement must stand or fall in its entirety." Officers for Justice, 688 F.2d at 630.

In order to approve a settlement in a class action, the court must conduct a two-step inquiry.[5] First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Second, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate." See Fed. R. Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard); Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d. 964, 972 (E.D. Cal. 2012) (conducting three-step inquiry).

In determining whether a settlement is fair, adequate, and reasonable, the court must weigh some or all of the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)).

---

[4] All "Rule" references are to the Federal Rules of Civil Procedure.

[5] If the class action is governed by the Class Action Fairness Act ("CAFA"), the court must also assess whether CAFA's notice requirements have been met. See 28 U.S.C. § 1715(d). Here, JND provided the CAFA Notice, (see Dkt. 156-1, Keough Decl. at ¶¶ 3-4 & Exh. B), and counsel for defendant confirmed at the final fairness hearing that there have been no objections to the settlement from the state and federal officials that received CAFA notices.

However, when "a settlement agreement is negotiated prior to formal class certification, consideration of these eight . . . factors alone is not enough to survive appellate review." Bluetooth, 654 F.3d at 946 (emphasis in original). This is because, "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement." Id.; see Koby v. ARS Nat'l Servs., Inc., 846 F.3d 1071, 1079 (9th Cir. 2017) ("When, as here, a class settlement is negotiated prior to formal class certification, there is an increased risk that the named plaintiffs and class counsel will breach the fiduciary obligations they owe to the absent class members."). District courts, therefore, also must determine "that the settlement is not the product of collusion among the negotiating parties." Bluetooth, 654 F.3d at 947 (internal quotation and alteration marks omitted). In making that determination, courts should look for signs of collusion, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds[;]" and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" Id. (internal quotation marks and citations omitted).

**DISCUSSION**

I.   FINAL APPROVAL OF CLASS SETTLEMENT.

   A.   Class Certification.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3). (See Dkt. 145, PAO at 7-14, 22). Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e). See, e.g., Gonzalez v. BMC West, LLC, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks omitted).

   B.   Rule 23(c) Notice Requirements.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule

23(c)(2) and, upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

After undertaking the required examination, the court approved the form of the proposed class notice. (See Dkt. 145, PAO at 19-21). As discussed above, the notice program was implemented by JND. (See Dkt. 156-1, Keough Decl. at ¶¶ 5-14). Accordingly, based on its prior findings and the record before it, the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement. (See Dkt. 145, PAO at 19-21; see also 15-1, Keough Decl. at ¶¶ 5-18 & Exh. B).

C. Whether the Class Settlement is Fair, Adequate and Reasonable.

1. **The Strength of Plaintiff's Case, and the Risk, Expense, Complexity, and Duration of Further Litigation**.

In evaluating the strength of the case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." Adoma, 913 F.Supp.2d at 975 (internal quotation marks omitted). "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." Id. at 976.

Here, in granting preliminary approval of the settlement, the court recognized the "risks of continued litigation [were] significant" and that "weighed against those risks," and coupled with the "costs and delay associated with continued litigation," the "benefits to the class" were within the range of reasonableness. (See Dkt. 145, PAO at 156). The settlement here affords class members monetary benefits in the face of various defenses to plaintiff's claims and substantial expense and delay. (See id. at 16-17; Dkt. 155, Memo at 15-16). Under the circumstances, the court finds it significant that the class members will receive "immediate recovery by way of the

compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted). In short, the court finds that this factor supports a finding that the settlement is fair, adequate, and reasonable.

### 2. The Risk of Maintaining Class Action Status Through Trial.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3). (See Dkt. 145, PAO at 7-14, 22). In deciding whether to certify the class for settlement purposes, the court determined that the requirements of Rule 23 for settlement purposes have been met. (See id.); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]"). Nothing has been put forth to challenge or otherwise undermine the court's previous order certifying the class for settlement purposes under Rule 23(e). See In re Apollo Grp. Inc. Sec. Litig., 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class."). Accordingly, this factor weighs in favor of approving the settlement.

### 3. The Amount Offered in Settlement.

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). In granting preliminary approval of the settlement, the court concluded that the settlement benefits were fair, adequate, and reasonable in light of the litigation risks in the case. (See Dkt. 145, PAO at 15-17); see, e.g., Esomonu v. Omnicare, Inc., 2019 WL 499750, *4 (N.D. Cal. 2019) (granting final approval of class action settlement in a FCRA case providing class members an estimated $17.31 each, which was "commensurate with recoveries approved by other California district courts"). Accordingly, this factor also weighs in favor of final approval.

### 4. The Extent of Discovery Completed and the Stage of Proceedings.

"A settlement following sufficient discovery and genuine arms-length negotiation is

presumed fair." Nat'l Rural Telecomms. Coop., 221 F.R.D. at 528. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." Id. at 527 (internal quotation marks omitted). The court previously examined these factors at length, noting that the parties had engaged in fact and expert discovery, (see Dkt. 145, PAO at 15), and "thoroughly investigated and considered their own and the opposing parties' positions[,]" (id.), which enabled them to develop "a sound basis for measuring the terms of the settlement against the risks of continued litigation[.]" (Id.). In other words, the parties entered the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions. See Nat'l Rural Telecomms., 221 F.R.D. at 527-28 (noting that parties' examination of the factual and legal bases of the disputed claims through completion of discovery "strongly militates in favor of the Court's approval of the settlement"); Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("What is required is that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently.") (internal quotation marks omitted). This factor also supports approval of the settlement.

5. **The Experience and Views of Counsel**.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." Nat'l Rural Telecomms., 221 F.R.D. at 528 (internal quotation marks and citation omitted). Here, class counsel view the settlement as "fair and in the best interests of the Class." (See Dkt. 156, Ridout Decl. at ¶ 18). The court has previously noted that class counsel are adequate. (See Dkt. 145, PAO at 11). Thus, this factor also supports approval of the settlement.

6. **The Presence of a Governmental Participant**.

There is no government participant in this matter. Accordingly, this factor is inapplicable. See Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *10, supplemented by 2011 WL

1838562 (N.D. Cal. 2011) (noting that lack of government entity involved in case rendered this factor inapplicable to the analysis).

       7.    **The Reaction of Class Members to the Proposed Settlement**.

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Nat'l Rural Telecomms., 221 F.R.D. at 529. Here, the reaction of the class has been very positive. There were only five requests for exclusion and no objections. (See Dkt. 156-1, Keogh Decl. at ¶¶ 16, 18; see, generally, Dkt. (no objections filed with the court)). The lack of objections and limited requests for exclusion support approval of the settlement. See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval when only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when there were only 56 opt outs and no objections out of the 2,385 class members).

II.    ATTORNEY'S FEES, COSTS AND SERVICE AWARD.

The Settlement Agreement provides that defendant will not oppose class counsel's request for an award of attorney's fees up to 25% of the settlement fund. (See Dkt. 144-1, Settlement Agreement at ¶ 85). Class counsel now seek such an award, which amounts to $300,000. (See id.; Dkt. 147, Fees Motion at 1; Dkt. 148, Memorandum of Points and Authorities in Support of Unopposed Motion for an Award of Class Representative Incentive Payment and Attorneys' Fees and Costs ("Fees Memo") at 1).

    A.    Attorney's Fee Award.

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In general, courts have discretion to choose among two different methods for calculating a

reasonable attorney's fee award. See Bluetooth, 654 F.3d at 941. Under the "percentage-of-the-fund" or "percentage-of-recovery" method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). This method is typically used when a common fund is created. See Bluetooth, 654 F.3d at 942.

Alternatively, under the lodestar method, the court multiplies the number of reasonable hours expended by a reasonable hourly rate. See Hanlon, 150 F.3d at 1029. Once the lodestar has been determined, the "figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." Id. The lodestar method is typically utilized when the relief obtained is "not easily monetized," such as when injunctive relief is part of the settlement. See Bluetooth, 654 F.3d at 941. The court's discretion in choosing between these two methods "must be exercised so as to achieve a reasonable result." Id. at 942; Glass v. UBS Fin. Servs., Inc., 2007 WL 221862, *14 (N.D. Cal. 2007), aff'd, 331 F.Appx. 452 (9th Cir. 2009) ("As always, when determining attorneys' fees, the district court [is] guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances.") (internal quotation marks and emphasis omitted).

Under the circumstances here, the court is persuaded that the percentage-of-fund method is the most appropriate so as to achieve a reasonable result in this case. The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorneys fees." Hanlon, 150 F.3d at 1029. Courts consider the "all of the circumstances of the case[,]" including the following factors when determining the percentage to be applied in a given case: (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee; and (5) awards made in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); Viceral v. Mistras Group, Inc., 2017 WL 661352, *3 (N.D. Cal. 2017) (utilizing similar factors); In re Online DCD-Rental Antitrust Litig., 779 F.3d 934, 955 (9th Cir. 2015) (explaining that "there are no doubt many factors that a court could apply in assessing an attorneys' fees award" and that "Vizcaino does not purport to establish an exhaustive list"). The

actual percentage will vary depending on the facts of each case, but in "most common fund cases, the award exceeds that benchmark." Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) (internal quotation marks omitted).

Here, having considered the above factors, the court finds no reason to depart from the 25 percent benchmark as requested by class counsel. As the court previously noted, the settlement amount is reasonable given that "statutory penalties are only available for willful violations, and that if only negligence was shown, class members would be limited to their actual damages." (Dkt. 145, PAO at 16); 15 U.S.C. 1681n(a)(1)(A); 15 U.S.C. 1681o(a)(1); see also Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941 (1983) ("the most critical factor is the degree of success obtained"). Also, as discussed above, see supra at § I.C.1, and in the Court's Preliminary Approval Order, the risks of continued litigation were significant. See Vizcaino, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee). Finally, class counsel took this case on a contingent basis. (See Dkt. 148, Fees Memo at 10-11; Dkt. 149, Declaration of Christopher P. Ridout in Support of Unopposed Motion for an Award of Class Representative Incentive Payment and Attorneys' Fees and Costs ("Ridout Fees Decl.") at ¶ 25); see Knight v. Red Door Salons, Inc., 2009 WL 248367, *6 (N.D. Cal. 2009) ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."). In short, consideration of the foregoing factors supports class counsel's request for attorney's fees in the amount of 25% of the settlement fund, or $300,000.00.[6] The court, therefore, is satisfied that a lodestar "cross-check" is not required. See Craft v. City of San Bernardino, 624 F.Supp.2d 1113, 1122 (C.D. Cal. 2008) ("A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point."). In sum, a fee award of 25% out of the settlement fund ($300,000.00) established by the Settlement Agreement is fair and reasonable.

---

[6] The court notes that the amount of attorney's fees plaintiff requests is below 25% given that the $300,000 includes incurred costs.

11

B.  Class Representative Service Award.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton, 327 F.3d at 977; see Wren, 2011 WL 1230826, at *31 ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards."). Here, plaintiff requests that the court grant a service award in the amount of $5,000. (See Dkt. 148, Fees Memo at 15).

In its order granting preliminary approval of the settlement, the court undertook an examination of the fairness and adequacy of the service award at issue, applying the careful scrutiny required in this Circuit. (See Dkt. 145, PAO at 18-19); see also Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (instructing "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives"). Based on its review of the record, the court determined that a service award of $5,000 was presumptively reasonable and did not create a conflict of interest between named plaintiff and absent class members. (See Dkt. 145, PAO at 18-19). The court therefore concludes that the requested service payment is fair and reasonable, and is hereby approved.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Motion for Final Approval of Class Action Settlement and Certification of Settlement Class **(Document No. 154)** is **granted** as set forth herein.

2. The court hereby **grants final approval** to the parties' Class Action Settlement Agreement ("Settlement Agreement") (Document No. 144-1). The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties shall perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

3. Plaintiff's Motion for an Award of Class Representative Incentive Payment and Attorney's Fees and Costs **(Document No. 147)** is **granted** as set forth herein.

4. The following class is certified under Federal Rule of Civil Procedure 23(c) for settlement

purposes: "All individuals who (1) were hired by Maxim between May 5, 2009 and August 27, 2012; (2) executed one of the forms collectively attached as Exhibit 'A' or a substantively identical version of those forms; and (3) were the subject of a consumer report procured by Maxim before August 27, 2012."

5. The form, manner, and content of the Class Notice meet the requirements of Federal Rules of Civil Procedure 23(c)(2).

6. Plaintiff Shonntey Moodie shall be paid a service payment of $5,000 in accordance with the terms of the Settlement Agreement and this Order.

7. Class counsel shall be paid $300,000.00 in attorney's fees and costs in accordance with the terms of the Settlement Agreement.

8. The Claims Administrator, JND, shall be paid for its fees and expenses in accordance with the terms of the Settlement Agreement.

9. All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

10. Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

11. Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

12. Judgment shall be entered accordingly.

Dated this 12th day of November, 2019.

/s/
Fernando M. Olguin
United States District Judge